## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

| | | |
|---|---|---|
| KAREN OLDRATI | : | |
| | : | No. |
| v. | : | |
| | : | **JURY TRIAL DEMAND** |
| BJ'S WHOLESALE CLUB, INC. | : | |

_____

### CIVIL ACTION COMPLAINT

### JURISDICTION AND VENUE

1.  This action is brought pursuant to 28 U.S.C. §1332 and the amount in controversy exceeds $75,000.00 and there is complete diversity of citizenship between the parties hereto as set forth herein below.

2.  Venue lies in the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. §1391 because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this Judicial District and Defendant is located in this Judicial District.

### PARTIES

3.  Plaintiff, Karen Oldrati, is an adult female individual who resides at 2516 South 11th Street, Philadelphia, PA 19148 and are at all times relevant hereto was and is a citizen of the Commonwealth of Pennsylvania.

4.  Defendant, BJ's Wholesale Club, Inc., is a corporation with a principal place of business located in Westborough, Massachusetts, and is incorporated in the State of Delaware, and is a citizen of the States of Massachusetts and Delaware.

5.  Defendant employs thousands of people nationwide.

6.  At all times material hereto, Defendant acted through its agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

**FACTUAL BACKGROUND**

7.  On or about April 16, 2016, Plaintiff commenced employment with Defendant as a cake decorator at Defendant's store located at 2300 West Oregon Avenue, Philadelphia, PA 19145.

8.  At all times material hereto, Plaintiff's performance was excellent.

9.  Plaintiff had been sexually harassed by male coworker, Jason Stoker (Baker), between about October 2017 and summer 2019.

10. Specifically, Mr. Stocker frequently engaged in inappropriate and unwanted touching, including rubbing against

Plaintiff and slapping and squeezing her buttocks.

11. On multiple occasions, Mr. Stocker made comments about Plaintiff's underwear, including but not limited to asking her the color of her bra and panties.

12. On multiple occasions, Mr. Stocker asked Plaintiff whether she preferred having sex on the top or bottom.

13. On one occasion, Mr. Stocker took photos of Plaintiff's buttocks and after she confronted him about it, he slapped her buttocks.

14. On one occasion, Mr. Stocker took Plaintiff's personal cell phone without her knowledge or permission and sent photos of Plaintiff that were on her cell phone to himself, and he then showed the photos to other mutual co-workers, including Lorena Blanco, Sandra Charkhi, Andrew Carrubba, and Mike Snarske.

15. On one occasion, Plaintiff asked Mr. Stocker to help her retrieve a box because her back hurt, and he responded, "Well, my balls hurt."

16. Mr. Stocker has made similarly inappropriate comments to female coworkers Danielle Carswell and Tiffany Bonner.

17. In about November/December 2018, Plaintiff first reported Mr. Stockers sexually laced comments and actions to Bill Riley (Male Overnight Manager).

18. Although she repeated her complaints to Mr. Riley over the next several months, he took no action to stop the sexual harassment.

19. Around June 2019, during a meeting with Louis Miller (Male Bakery Manager) and Jen Cherry (Female Operations Manager), Plaintiff also reported sexually inappropriate language used by Mr. Stocker.

20. Ms. Cherry did not take Plaintiff's concerns seriously, responding that the specific incidents that she raised during the conversation had happened "last year" and "we should put it behind us."

21. On June 19, 2019, Mr. Stocker told Plaintiff that he admitted to his behavior to Mr. Miller and that Mr. Miller told him not to worry because "it was never reported."

22. On June 20, 2019, Plaintiff delivered a letter detailing acts of sexual harassment by Mr. Stocker to Mike Visco (Male General Manager).

23. Mr. Visco did not receive the letter until about the week of June 24, 2019, when he returned from vacation, and he thereafter scheduled a private meeting with Plaintiff to discuss the incidents.

24. During the meeting, Mr. Visco's attitude was dismissive, and he stated that much time had passed since the incidents and he blamed Mr. Riley (who by then had left employment with Defendant) for not addressing Plaintiff's concerns earlier.

25. Mr. Visco addressed Plaintiff using the demeaning gendered terms such as "Hon" while discussing Plaintiff's concerns.

26. Mr. Visco assured Plaintiff that he would elevate the issues to a higher level of corporate human resources.

27. Despite Mr. Visco's promise, Plaintiff was not contacted by HR until she herself sent a letter to HR describing the situation.

28. Helen (Female HR representative) contacted Plaintiff and told her that Mr. Visco informed HR of the issue and that the issue was resolved.

29. Plaintiff responded to Helen that the issue was not resolved and that she was subjected to retaliatory treatment.

30. After meeting with Mr. Visco, Plaintiff was reassigned from her usual morning shift to a less desirable later shift.

31. Most notably, Plaintiff's average weekly hours on the new shift had been reduced since meeting with Mr. Visco, from an

average of 38.17 hours weekly to 34.47 hours weekly, which amounted to an average weekly income loss of $48.43 weekly (or about a 10% pay cut).

32. Additionally, Plaintiff was assigned alone on her shift with no support, whereas Mr. Stocker continued to have support on the shifts to which he was assigned.

33. After meeting with Mr. Visco, Plaintiff was no longer called into work early when additional hours were available so that she could earn overtime pay, as had occurred in the past.

34. Before and after Plaintiff's meeting with Mr. Visco, Mr. Stocker was given preference over Plaintiff to cover higher paying Sunday and holiday shifts.

35. After meeting with Mr. Visco, Mr. Stocker intentionally loaded heavy bagel boxes on high shelves knowing that they are difficult to reach, and when Plaintiff asked Mr. Stocker to not put those bagel boxes up so high, he responded: "This is a man's job."

36. Plaintiff reported her dissatisfaction with the new shift to Mr. Miller and she reported the sexist comment ("this is a man's job") to Ms. Cherry.

37. On August 28, 2019, Plaintiff was asked by Mr. Miller and Ms. Cherry to sign a "Team Member Coaching Form"

acknowledging Plaintiff's agreement to follow policies or face discipline up to an including termination.

38. Plaintiff believes and thus avers that no other employee was asked to sign such a form.

39. On September 7, 2019, Plaintiff was called into a meeting with Mr. Miller and Mr. Visco and received a verbal reprimand for allegedly leaving expired baked goods on display after opening the store that day.

40. This is untrue as Plaintiff was not responsible for the error of leaving baked goods on display for which she was blamed.

41. Plaintiff observed that Mr. Stocker was never held accountable for baked goods left on display after he had on occasion opened the store.

42. Plaintiff believes and thus avers that Mr. Stocker was not disciplined for his sexual harassment.

43. Sandra Charkhi reported sexual harassment to Defendant, and, like Plaintiff, was thereafter reassigned to a less desirable shift.

44. Defendant's actions violated the Philadelphia Fair Practices Ordinance, Section 9-1100, et seq. (hereinafter "PFPO").

45. Defendant and its agents acted at all times material hereto acted with their authority to hire, fire and discipline.

46. Defendant and its agents undertook a course of conduct toward Plaintiff and demoted her because she complained of sexual harassment.

47. In addition, Defendant allowed the daily sexual harassment to continue between November/December 2018 and the end of June 2019, despite Plaintiff's complaints to Mr. Riley that she was being sexually harassed by Mr. Stocker.

48. Defendant's agents acted against Plaintiff in a bigoted, willful, and malicious manner.

49. Plaintiff was subjected to humiliation, embarrassment, and mental anguish because of the hostile work environment which was perpetuated by defendant's inaction and the unlawful retaliatory demotion of her employment.

50. Defendant unlawfully failed to take measures to stop regular and pervasive hostile work environment sexual harassment for a period of about 6-7 months and thereafter unlawfully demoted Plaintiff in retaliation for reporting the sexual harassment, all in violation of the PFPO.

51. Defendant and its management employees acted with deliberate indifference to Plaintiff's civil rights.

52. Defendant and its management employees acted willfully and maliciously and are liable to Plaintiff for punitive damages as a result.

53. Plaintiff seeks lost pay, benefits, lost future pay, compensatory damages for pain and suffering, punitive damages, and attorneys' fees and costs.

### COUNT I-- Violation of Title VII—Hostile Work Environment Sexual Harassment

54. The foregoing paragraphs are incorporated herein as if set forth in full.

55. By and through its conduct, Defendant violated the PFPO by intentionally discriminating against plaintiff and by showing deliberate indifference to Plaintiff's civil rights by failing to take appropriate action to stop or otherwise mitigate the regular and pervasive sexual harassment endured by Plaintiff at the workplace during the aforementioned time period.

### COUNT II-- Title VII—Retaliation

56. The foregoing paragraphs are incorporated herein as if set forth in full.

49. By and through its conduct, defendant violated the PFPO by intentionally discriminating against plaintiff and by

demoting her in retaliation for making good faith complaints of sexual harassment by giving her an undesirable job with lower pay and less opportunities for overtime.

WHEREFORE, Plaintiff demands that judgment be entered in her favor on Counts 1 and 2 against Defendant for lost pay, lost bonuses, lost benefits, other financial losses, compensatory damages for emotional pain and suffering, punitive damages, attorneys' fees, costs, interest, and any other relief that this Honorable Court deems to be fair and proper.

/s/ Samuel A. Dion
_____
Samuel A. Dion, Esq.
Dion & Goldberger
1845 Walnut Street, Ste. 1199
Philadelphia, PA 19103
215-546-6033 (tel)
215-546-6269 (fax)
Attorneys for Plaintiff